RECEIVED
JUL 1 2 2011
TONY R. MOORE, CLERK
BY_____
   DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

---

PEOPLES STATE BANK

versus                                                   CIVIL NO. 10-0086
                                                           JUDGE TOM STAGG

PROGRESSIVE CASUALTY INSURANCE CO.

---

## MEMORANDUM RULING

Before the court are cross motions for summary judgment, seeking resolution of whether Peoples State Bank's ("Peoples") financial loss, resulting from three forged or counterfeit loan packages, is covered under its Financial Institution Bond issued by Progressive Casualty Insurance Company ("Progressive"). See Record Documents 17 and 18. Based on the following, Peoples's motion for summary judgment is **GRANTED**, and Progressive's motion for summary judgment is **DENIED**.

### I. BACKGROUND[1]

From approximately 2002 through 2009, Peoples and First Fidelity Mortgage, Inc. ("First Fidelity") had a "warehouse lending" arrangement. First

---

[1] The facts are drawn largely from the parties' statements of uncontested material facts and from the affidavits of Michael Truelove and Kathryn Thomas. See Record Document 17, Exs. 2 and 3; Record Document 22, Exs. A and F.

1

Fidelity, which often did business as "Southern Funding," made residential loans to individuals secured by a mortgage. To fund the loans, First Fidelity borrowed money from Peoples through a revolving line of credit.[2] Following the closing of a residential loan, First Fidelity presented the closed loan package to Peoples. See Record Document 22, Exs. A and F. Peoples accepted the loan package by signing for it and making a copy of the signature page for the file. See id. Peoples did not review or verify the loans. Peoples then debited First Fidelity's line of credit for the amount of the loan. See id. To secure First Fidelity's line of credit, Peoples took a security interest in the home loan and mortgage. In other words, the home loans served as collateral for First Fidelity's line of credit. First Fidelity then sold the home loans and mortgages on the secondary market and used the sale proceeds to repay its line of credit. This relationship between Peoples and First Fidelity continued for six years, during which time First Fidelity presented over 700 loan packages to Peoples, totaling over $62,000,000. Each of the prior loans sold on the secondary market, and First Fidelity always repaid its line of credit. See id.

At issue in this case are three loan packages, containing forged or falsified documents, presented by First Fidelity to Peoples in January of 2009: (1) Edward M. Novak, II in the amount of $30,000 ("Novak loan"), (2) Alvin Dale Crane in

---

[2] First Fidelity's line of credit, initially totaling $500,000, was increased to $1,000,000 in October of 2003. See Record Document 22, Ex. A.

the amount of $155,000 ("Crane loan"), and (3) Patricia Ann McGee Shelby in the amount of $164,100 ("Shelby loan"). See Record Document 17, Defendant's Statement of Uncontested Material Facts. In accordance with their long-standing business arrangement, Peoples received the residential loan packages and then loaned First Fidelity the funds, totaling $349,100, by debiting First Fidelity's line of credit. Unbeknownst to Peoples, all three loan packages contained forged or falsified documents. As a result, the loans were never purchased on the secondary market, and First Fidelity did not repay Peoples for the draw on its line of credit.

The Novak and Crane loans were legitimate loans that First Fidelity had already funded through another lender. One or more employees of First Fidelity copied portions of the original loan packages, forged the signatures of Novak and Crane, and submitted them to Peoples as originals. See id. The Shelby loan was completely falsified. Shelby had applied for, but did not secure, a loan with First Fidelity, and she never completed any loan documentation. Thus, each item in the Shelby loan package was forged or falsified by an employee of First Fidelity. See id.

At all relevant times, Peoples had in full force and effect a "Financial Institution Bond," or insurance policy, with Progressive (hereinafter "the Bond"). Peoples now seeks recovery for its financial loss from Progressive under the Bond. Specifically, Peoples claims that coverage is provided under Insuring Agreements

(D), (E), (G).³ In its motion, Peoples contends that Insuring Agreement (E) provides coverage, as it requires only reliance on and physical possession of the documents and not a greater duty to review or verify. See Record Document 18. In its motion, Progressive maintains that coverage under Insuring Agreement (E) is precluded, because Peoples never reviewed or verified the contents of the loan packages prior to extending credit to First Fidelity and therefore could not have relied "on the faith of" the forged or counterfeit documents. See Record Document 17.

The parties also contest coverage under Insuring Agreements (D) and (G). As the court finds that Insuring Agreement (E) provides coverage for Peoples's financial loss, it does not reach the other bond provisions.

## II. ANALYSIS

A.  **Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."⁴ Quality Infusion Care, Inc. v.

---

³ In its complaint, Peoples alleged that coverage exists under Insuring Agreements (D), (E), (F) or (G). See Record Document 1. Peoples admits in its motion for summary judgment, however, that Insuring Agreement (F) does not afford coverage. See Record Document 18 at 7.

⁴ The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).

**B.     Coverage Under The Bond.**

Peoples claims coverage for its losses resulting from the three loan packages under Insuring Agreements (D), (E), and (G) of the Bond. "An insurance policy is a contract between the parties and should be construed by using the general rules of

interpretation of contracts set forth in the [Louisiana] Civil Code."[5] La. Ins. Guaranty Assoc. v. Interstate Fire & Cas. Co., 630 So.2d 759, 763 (La. 1994). "The interpretation of an insurance contract is nothing more than a determination of the common intent of the parties." Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000) (citing La. Civ. Code art. 2045). The parties' intent must be "determined in accordance with the general, ordinary, plain and popular meaning of the words used in the policy, unless the words have acquired a technical meaning." La. Ins. Guaranty Assoc., 630 So.2d at 763 (citing La. Civ. Code art. 2047). Furthermore, "[a]n insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." Id. As the insured, Peoples bears the burden of proving its loss is covered by Insuring Agreement (D), (E), or (G). See Doerr, 774 So.2d at 124 ("[I]t is the burden of the insured to prove the incident falls within the policy's terms.").

### 1. Insuring Agreement (E).

Insuring Agreement (E) provides:

### SECURITIES

(E)   Loss resulting directly from the Insured having, in good faith, for its own account or for the account of others,

---

[5] This diversity case is governed by Louisiana substantive law. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

(1) acquired, sold or delivered or given value, **extended credit** or assumed liability, **on the faith of**, any Written, Original

    (a)    Certificated Security,
    (b)    Document of Title,
    (c)    Deed, mortgage or other instrument conveying title to, or creating or discharging a lien upon, real property,
    (d)    Certificate of Origin or Title,
    (e)    Certificate of Deposit,
    (f)    Evidence of Debt,
    (g)    Corporate, partnership or personal Guarantee, or
    (h)    Security Agreement,

which (i) bears a handwritten signature of any maker, drawer, issuer, endorser, assignor, lessee, transfer agent, registrar, acceptor, surety, guarantor, or of any other person whose signature is material to the validity or enforceability of the security, which is a **Forgery**,[6] or (ii) is altered, or (iii) is lost or stolen;

(2) guaranteed in writing or witnessed any signature upon any transfer, assignment, bill of sale, power of attorney, Guarantee, endorsement or any items listed in (a) through (h) above; or

(3) acquired, sold or delivered, or given value, **extended credit** or assumed liability, **on the faith of** any item listed in (a) through (e) above which is a **Counterfeit**.[7]

Actual physical possession of the items listed in (a) through (h) above by the Insured, its correspondent bank or other authorized representative, is a condition precedent to the Insured's having relied on the faith of such items.

---

[6] The Bond defines "forgery" to include "affixing the handwritten signature, or a reproduction of the handwritten signature, of another natural person without authorization and with intent to deceive." See Record Document 17, Ex. 1 at 8.

[7] "Counterfeit" means "a Written imitation of an actual, valid Original which is intended to deceive and to be taken as the Original." See Record Document 17, Ex. 1 at 7.

> A reproduction of a handwritten signature is treated the same as the handwritten signature. An electronic or digital signature is not treated as a reproduction of a handwritten signature.

Record Document 17, Ex. 1 at 3 (emphasis added). Peoples's financial loss was a direct result of its extension of credit to First Fidelity on the basis of the three loan packages that contained forged or counterfeit documents. Progressive does not dispute that all three loan packages contained forged signatures on documents satisfying (E)(1)(a)-(h).[8] See Record Document 23 at 3; Record Document 17, Statement of Uncontested Material Facts. Progressive also does not contend, and the evidence does not suggest, that Peoples was not acting in good faith. The only issue before the court is the meaning of the phrase "on the faith of," namely whether the requirement that an extension of credit be "on the faith of" forged or counterfeit documents mandates some review or verification of the documents.

The Bond's only express requirement for an insured to have acted "on the faith of" is "actual physical possession." Insuring Agreement (E) provides that "actual physical possession" of the documents is "a condition precedent to the Insured's having relied **on the faith of** such items." Record Document 17, Ex. 1 at 3 (emphasis added). The provision does not otherwise define "on the faith of" and does not list any other conditions. The phrase is also not defined elsewhere in the Bond. A plain reading of "on the faith of" indicates that some reliance on the

---

[8] In addition, the Novak and Crane loan packages were counterfeit, as they were valid, original loans that were copied and presented to Peoples as originals.

documents is intended. See First Union Corp. v. U.S. Fid. & Guaranty Co., 126 Md.App. 499, 510 (Md. Ct. Spec. App. 1999) ("Courts have interpreted the language, 'on the faith of,' as signifying reliance."); Cont'l Bank v. Phoenix Ins. Co., 24 Cal.App.3d 909, 913 (Cal. Ct. App. 1972) ("The phrase, 'on the faith of,' clearly signifies something done 'in reliance upon.'").

Thus, on its face, the Bond requires only reliance and physical possession. It is undisputed that Peoples had physical possession of the loan packages prior to extending credit to First Fidelity. It is also undisputed that Peoples extended credit to First Fidelity in exchange for a security interest in the loans and mortgages, thereby relying on the documents as collateral. Peoples would not have extended credit to First Fidelity had it known the loan packages were counterfeit or forged. Under the Bond's own terms, Peoples's possession of and reliance on the loan packages is sufficient, and Peoples's losses fall within the Insuring Agreement (E).

The court does not consider reliance to be synonymous with review or verification, and will not read this heightened burden into the Bond where it is not stated. In particular, the court refuses to read the requirement of physical possession as including verification or review of the documents.[9] To do so would

---

[9] Progressive cites National City Bank of Minneapolis v. Saint Paul Fire and Marine Insurance Company, 447 N.W.2d 171 (Minn. 1989) in support of its argument that verification is required. In National City Bank of Minneapolis, however, the court denied the plaintiff relief on the basis that it had not met the physical possession requirement of Insuring Agreement (E). The court's later discussion of verification was merely dicta, and as the court acknowledged,

be to read the provision in "a strained manner so as to . . . restrict its provisions beyond what is reasonably contemplated by its terms." La. Ins. Guaranty Assoc., 630 So.2d at 763.

Progressive's assertion that Peoples failed to review or verify the signatures on the home loan packages presented by First Fidelity can be "described as nothing more than [a claim of] negligence." Beach Cmty. Bank v. Saint Paul Mercury Ins., 653 F.3d 1190, 1200 (11th Cir. 2011). As the Fifth Circuit has explained, "[h]ad negligence been intended as a good defense to payment for injuries covered by (E), it should have been set out in the agreement." First Nat'l Bank of Fort Walton Beach v. U.S. Fid. & Guaranty Co., 416 F.2d 52, 57 (5th Cir. 1969) (holding that the insured's failure to investigate the authenticity of documents did not preclude it from recovery under Insuring Agreement (E)).[10] This court likewise holds that if Progressive intended for the review or verification of documents to be a condition

---

"verification is not required by Clause (E) of the Bond." Nat'l City Bank of Minneapolis, 447 N.W.2d at 177.

[10] In Beach Community Bank and First National Bank of Fort Walton Beach, the defendant insurance companies argued that the insured banks failed to satisfy the requirement of good faith, and therefore failed to satisfy Insuring Agreement (E), because they neglected to verify the authenticity of the signatures or documents. See Beach Cmty. Bank, 653 F.3d at 1200; First Nat'l Bank of Fort Walton Beach, 416 F.2d at 57. Both courts clearly rejected this argument. See id. Although Progressive has rephrased this argument as an interpretation of the "on the faith of," rather than the "good faith," requirement, the court finds that the position is similarly without merit.

precedent to recovery under Insuring Agreement (E), it should have stated so in the agreement.

Peoples has shown there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. The court finds that Peoples's losses fall within Insuring Agreement (E) of the Bond, and summary judgment for Peoples is therefore appropriate.[11]

### III. CONCLUSION

The court finds that the Bond provides coverage for Peoples's financial losses resulting from forged or counterfeit documents under Insuring Agreement (E). Accordingly, Peoples's motion for summary judgment is **GRANTED**, and Progressive's motion for summary judgment is **DENIED**. Progressive is ordered to pay Peoples $274,100.00.

A judgment consistent with this Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this, the 11th day of July, 2011.

_____
JUDGE TOM STAGG

---

[11] As the court finds coverage under Insuring Agreement (E), it does not reach Insuring Agreements (D) or (G).